UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Smith, | No. 13-cv-3277 (JRT/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| United States of America, et al, | |
| Defendants. | |

---

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, and upon Plaintiff's Motion for Preliminary Injunction. [Docket No. 4]. For the reasons discussed below, this Court recommends that Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], be **DENIED**.

I.   BACKGROUND

Plaintiff, who identifies himself as "John Smith," is an inmate at a Federal Correctional Institution in New York. (Compl. [Docket No. 1], at 3). Plaintiff, proceeding *pro se*,[1] initiated this action on or about December 2, 2013, by filing his Complaint, which alleges that various Federal prison officials failed to provide him with proper medical care. [Docket No. 1]. Subsequently, on January 16, 2014, he filed an Amended Complaint, [Docket No. 2], which at present is the operative complaint in this case, and which alleges that the Defendants' actions

---

[1] Because Plaintiff is proceeding *pro se*, the Court must read the content of his pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

1

demonstrated "deliberate indifference," in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Id. at 53-56).[2]

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Docket No. 4][3]

Plaintiff asks this Court to order that the Defendant United States take him immediately "to a hospital and evaluated for reasons as stated in the Complaint, and thus be provided any recommended care and/or treatment resulting from such evaluation to ensure the safety, health and enjoyment of life of the plaintiff." (See Docket No. 4.).[4]

### A. Personal Jurisdiction

---

[2] In his Amended Complaint, [Docket No. 2], Plaintiff also asserts claims for violations of due process, (Id. at 57); and state law claims for negligence, (Id. at 58-60). However, the present Motion for Preliminary Injunction appears to arise only from his Eighth Amendment claims.

[3] It appears that, although Plaintiff styles his Motion as a request for a preliminary injunction, which generally is granted only upon notice to the opposing party or parties, he also seeks a temporary restraining order, which may be granted without notice to the opposing party or parties. (Compare Motion [Docket No. 4]) (styled as, and requesting, a preliminary injunction); with Decl. Smith [Docket No. 6] (requesting *both* a temporary restraining order compelling the Defendants to arrange for a medical examination of Plaintiff, *and* a preliminary injunction requiring that Defendants carry out any plan of treatment)). Construing Plaintiff's Motion liberally, as this Court must, see fn.1, supra, the Court construes Plaintiff's Motion as requesting both a preliminary injunction *and* a temporary restraining order.
   Because the standard for analyzing a motion for a temporary restraining order is the same as for a motion for a preliminary injunction, there does not appear to be a material difference for purposes of considering the merits of Plaintiff's Motion.

[4] Because Plaintiff seeks an order compelling the United States to perform a duty he believes is owed to him, a motion for writ of mandamus might have been a more appropriate request for relief. See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). "Mandamus relief is available only if a plaintiff establishes three things: (1) a clear and indisputable right to the relief sought, (2) a non-discretionary duty on the defendant's part to honor that right, and (3) the unavailability of any other adequate remedy." Ali v. Frazier, 575 F. Supp. 2d 1084, 1088 (D. Minn. 2008) (citing Castillo v. Ridge, 445 F.3d 1057, 1060-61 (8th Cir. 2006)). However, because the Court finds below that this Court lacks personal jurisdiction at this time to enforce any form of equitable relief against Defendant United States, and because the Court also finds that Plaintiff's Motion for Preliminary Injunction would fail even under the standard for reviewing requests for injunctive relief, the Court need not consider whether Plaintiff has met the requirements for a motion for writ of mandamus.

2

As an initial matter, the Court must determine whether it has personal jurisdiction over the party against whom Plaintiff seeks injunctive relief, namely, the United States.[5] This Court granted Plaintiff's application to proceed IFP on January 31, 2014. (Order [Docket No. 11]). Subsequently, on February 19, 2014, summons were issued as to each of the named defendants. (Summons Issued [Docket No. 12]). On February 28, 2014, Plaintiff provided a corrected address for service upon the U.S. Attorney General, (Letter to Clerk's Office [Docket No. 13]; and subsequently, on March 6, 2014, the Clerk of Court reissued a summons as to Defendant United States, (Summons Reissued [Docket No. 15]). At present, however, the docket does not reflect that Defendant United States has ever been served with the summons and complaint.[6]

On the present record, the Court cannot grant Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], because the record does not reflect that Plaintiff has yet served his summons and complaint upon Defendant United States, and therefore, the court has not acquired personal jurisdiction over Defendant United States. See Smith v. Ghana Commercial Bank, Ltd., 379 Fed. Appx. 542, 543 (8th Cir. unpub. 2010) (court lacks personal jurisdiction where plaintiff fails to effect service of process); Triemert v. Wash. Cnty., No. 13-1312 (PJS/JSM), 2013 U.S.

---

[5] Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], does not specifically limit its request for injunctive relief to Defendant United States. However, Plaintiff is presently incarcerated at a Federal Correctional Institution in New York, and none of the individual Defendants is identified in the Amended Complaint as even working at that institution. (Am. Compl. [Docket No. 2], at 6-7). Given the nature of the injunctive relief that Plaintiff seeks, and the relative positions of the individual Defendants, the Court construes Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], as brought only against Defendant United States.

[6] The Federal Rules of Civil Procedure provide that:
  (1)To serve the United States, a party must:
    (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
      (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
    (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; **and**
    (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.
Fed. R. Civ. P. 4(i)(1) (emphasis added).

3

Dist. LEXIS 126182, at *12 (D. Minn. Aug. 13, 2013) (Mayeron, M.J.) (where the court lacks personal jurisdiction over a defendant because the plaintiff failed to perfect service, the court "cannot issue an injunction"), adopted by 2013 U.S. Dist. LEXIS 125304 (D. Minn. Sept. 3, 2013) (Schiltz, J.).

Consequently, the Court recommends that Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], be **DENIED** for lack of personal jurisdiction.

### B. Consideration on the merits

Notwithstanding the present lack of personal jurisdiction over the Defendant United States as discussed above, in the interests of cautions thoroughness, even considering the merits of Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], the Court would have also recommended that the Motion be denied.

#### 1. Standard of Review

When considering a motion for a preliminary injunction, the Court considers the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc); Tom T., Inc. v. City of Eveleth, No. 03-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003).

#### 2. Discussion

Plaintiff only addresses three of the four factors in the most general of terms when he conclusorily argues (1) that he "faces the likelihood of 'irreparable harm' to his person as well as to his Constitutional Eighth Amendment Rights," (Mot. Prelim. Inj. [Docket No. 4], at 1-2); (2)

that the balance of hardships favors him, because he "will suffer more without such injunctive relief, than would the defendants, if such injunctive relief is granted," (Id. at 2); and that "[i]t is always in the public[']s interest for Government officials, including prison personnel, to obey the Constitution, and other laws," (Id.).  He makes no specific argument with respect to the fourth factor: his likelihood to prevail on the merits.

The Court would have recommend denying Plaintiff's motion for preliminary injunctive relief notwithstanding its present lack of personal jurisdiction over the Defendant United States because Plaintiff has not met his burden with regard to two of the factors listed above.  Plaintiff has not shown that he is likely to succeed on the merits of his claim, and additionally, he has not shown that there is a threat of irreparable harm if this Court were not to grant the injunctive relief that he seeks.

    a. **Likelihood of Success on the Merits**

"Because the probability of 'success on the merits has been referred to as the most important of the four factors,' we consider it first."  Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Roudachevski v. All-American Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011) (internal edit and citation omitted)).  In the present case, the Court finds that Plaintiff has failed to show that he is likely to succeed on the merits of his claim because the very medical records that he submits as Exhibits, [Docket No. 5], to his Motion for Preliminary Injunction, [Docket No. 4], appear to show that the Defendants did not violate Plaintiff's Eighth Amendment rights.

A prison official can be liable for violating a prisoner's Eighth Amendment rights if he or she has acted with "deliberate indifference" to the prisoner's "serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  The Eighth Circuit Court of Appeals has explained that:

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component . . . . [P]laintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted).

"A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Mays v. Rhodes, 255 F.3d 644, 649 (8th Cir. 2001) ("[d]eliberate indifference requires proof that [the prisoner-plaintiff] suffered objectively serious medical needs and that the [defendants] actually knew of these needs but deliberately disregarded them"). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993). Thus:

> Medical malpractice alone . . . is not actionable under the Eighth Amendment . . . . [Citation omitted]. For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and **mere disagreement with treatment decisions does not rise to the level of a constitutional violation**."

Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (emphasis added)).

A prisoner cannot maintain a deliberate indifference claim simply because he disagrees with his medical treatment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) ("'mere disagreement with treatment decisions does not rise to the level of a constitutional violation'") (quoting Estate of Rosenberg, 56 F.3d at 37); see also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's Eighth Amendment claims were properly dismissed on summary judgment because they were based on "nothing more than mere disagreement with the course of

his medical treatment"). As the Eighth Circuit explained in Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996):

> [N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. See Id. at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).

Long, 86 F.3d at 765.

With these standards in mind, the Court turns to the present record, which consists of (1) Plaintiff's Amended Complaint, [Docket No. 2]; his Motion for Preliminary Injunction, [Docket No. 4]; various medical records contained within his Exhibits, [Docket No. 5]; and his Declaration, [Docket No. 6].

In his Motion, Plaintiff specifically seeks injunctive relief with regard to his alleged "heart condition,"[7] (Mot. Prelim. Inj. [Docket No. 4], at 2), which he alleges the Defendants have not sufficiently investigated or treated. Plaintiff asks this Court to Order that Defendant United States "arrange for an examination and a plan of treatment by a qualified cardiology specialist, and . . . to ensure that such plan of treatment is carried out." (Decl. Smith [Docket No. 6], at ¶ 9).

Plaintiff alleges that, while preparing to exercise on March 28, 2012, he experienced a "'[l]ife-threatening' moment," which he appears to have personally concluded was a heart

---

[7] Plaintiff also refers in his Declaration to his allegations that Defendants falsified records related to urine tests conducted in 2011. (Decl. Smith [Docket No. 6], at ¶¶ 2-3). Plaintiff also submits various medical records related to urine tests. (Pl.'s Ex. [Docket No. 5], at 1-4). However, the only injunctive relief that Plaintiff seeks by way of his Motion for Preliminary Injunction and his supporting Declaration is his request to be seen by a cardiologist. (See Docket Nos. 4, 6). Consequently, for purposes of Plaintiff's Motion for Preliminary Injunction, the Court only considers his alleged cardiac health and treatment.

arrhythmia. (Id. at ¶ 4).[8]  On the following day, March 29, 2012, Plaintiff reported his experience to prison medical staff and requested that they order an electrocardiogram (an "EKG"). (Am. Compl. [Docket No. 2], at ¶ 76). The present record appears to reflect that an EKG was in fact performed (although it does not provide the specific date that it was performed), and that the "results were normal." (Id. at 77).

The medical records that Plaintiff provided for this Court's review show that on April 17, 2012, he was approved to undergo a cardiology stress test. (Pl.'s Ex. 12 [Docket No. 5], at 5). However, on the following day, April 18, 2012, Defendant Regional Medical Director Dr. Paul Harvey, M.D. ("Defendant Dr. Harvey"), entered a note cancelling the cardiology stress test, noting that Plaintiff's "labs were normal, the EKG was normal with no ectopy and the inmate is not overtly symptomatic." (Pl.'s Ex. 13 [Docket No. 5], at 6). Defendant Dr. Harvey further recommended that Plaintiff be placed under a "Sports Restriction," and stated that the medical team could reconsider if Plaintiff's "signs or symptoms indicate the need for further clinical investigation." (Id.).

However, it appears that Plaintiff was not immediately informed that his cardiology stress test was cancelled. (Am. Compl. [Docket No. 2], at ¶ 81 (as of July 11, 2012, Plaintiff "has yet to be called and/or informed of any change in status" regarding his cardiology stress test)). Consequently, on July 11, 2012, Plaintiff asked hospital medical staff for an update. (Id.) Approximately two weeks later, on July 26, 2012, Defendant Health Services Administrator Barbara Mock ("Defendant Mock") entered an administrative note in Plaintiff's medical records that she had informed Plaintiff that his referral for a cardiology stress test had been denied, and

---

[8] See also Am. Compl. [Docket No. 2], at ¶ 75 (while doing warm-up exercises in his cell, Plaintiff's "heart erupt[ed] into a quickened and erratic manner resulting i[n] [Plaintiff] feeling short of breath, and faint. [Plaintiff] as he struggles to breathe sits and begins to exercise controlled breathing techniques as he fights for consciousness. After what felt like a marble pass through [Plaintiff's] heart, [the] experience ends.").

that he should "[follow up] with provider if [signs and symptoms] worsen/change." (Pl.'s Ex. [Docket No. 16], at 8). Plaintiff's Amended Complaint describes several other subsequent discussions with medical and administrative personnel concerning his desire to have a cardiology stress test. (Am. Compl. [Docket No. 2], at ¶¶ 84-92).[9]

On the record presently before the Court, Plaintiff has not established that he is likely to prevail on the merits. The record shows that Plaintiff experienced a self-described frightening cardiac event, and reported it the next day to prison medical and administrative staff, who ordered an EKG and initially scheduled a cardiology stress test. However, the record also shows that the EKG came back normal, and that the prison medical staff considered both the EKG results and Plaintiff's self-reported symptoms in reconsidering his need for a cardiac stress test. Clearly Plaintiff disagrees with their decision. However, to the extent that Plaintiff alleges that this is more than merely a disagreement over his treatment, and that it is in fact "deliberate indifference" to what he subjectively believes to be a serious medical condition, he has presented this Court with no evidence in the present record that would demonstrate support for his claim.[10]

Consequently, the Court would conclude that Plaintiff has not demonstrated that he is likely to prevail on the merits, which is "'the most important of the four factors,'" Arnzen, 713 F.3d at 372 (quoting Roudachevski, 648 F.3d at 706).

### b. Irreparable Harm

In the present case, Plaintiff's claim of "irreparable harm" is factually subsumed within the question of whether he is likely to prevail on the merits. Plaintiff implies that Defendants, by failing to treat what he subjectively believes to be a possibly serious cardiac condition, have put

---

[9] However, although Plaintiff occasionally cites to various "exhibits" in support of these allegations, he has not actually submitted any of those exhibits to this Court.

[10] The Court takes no position on whether ultimately, after any discovery and upon a more complete record, Plaintiff may prevail. However, on the present evidentiary record, the Court cannot conclude that Plaintiff is likely to prevail on the merits.

his health in jeopardy. However, the medical evidence presently before the Court appears to show that Plaintiff's EKG results were normal, and that his self-reported symptoms did not warrant a cardiac stress test. See Part II.B.2.a, supra. Consequently, this Court finds that, on the present evidentiary record, Plaintiff has not shown that he is likely to suffer irreparable harm if this Court does not grant the preliminary injunctive relief that he seeks.

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction, [Docket No. 4], be **DENIED**, as set forth above.

Dated: April 3, 2014                                    s/Leo I. Brisbois
                                                       LEO I. BRISBOIS
                                                       United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 17, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.