UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN SMITH,<br><br>                          Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>BARBARA MOCK, PAUL HARVEY,<br>THOMAS MAYER, SCOTT FISHER,<br>PETE BENNETT, and<br>HARRELL WATTS,<br><br>                          Defendants. | Civil No. 13-3277 (JRT/LIB)<br><br><br><br>**MEMORANDUM OPINION<br>AND  ORDER** |

John Smith, No. 14029-059, Federal Correctional Institution – Otisville, Post Office Box 444, Two Mile Drive, Otisville, NY  10963, *pro se*.

Chad A. Blumenfield, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN  55415, for defendants United States of America, Barbara Mock, Paul Harvey, Scott Fisher, Pete Bennett, and Harrell Watts.

Andrea Pavelka Hoversten and Robert M. Mahoney, **GERAGHTY, O'LOUGHLIN & KENNEY, PA**, 55 East Fifth Street, Suite 1100, St. Paul, MN  55101, for defendant Thomas Mayer.

This case is before the Court on Plaintiff John Smith's objections to a Report and Recommendation ("R&R") recommending that his motion for preliminary injunction be denied, and Smith's appeal from United States Magistrate Judge Leo I. Brisbois's denial of his motion for the appointment of counsel.  On January 16, 2014, Smith, an inmate at a Federal Correctional Institution in New York, filed an amended complaint naming the

United States and several employees of the Federal Bureau of Prisons as Defendants, alleging violations of his right to receive medical treatment under the Fifth and Eighth Amendments. That same day, Smith filed a motion for preliminary injunction, seeking an order requiring Defendants to take Smith to a hospital for a medical evaluation and treatment. Smith also filed a motion for appointment of counsel.

On April 3, 2014, the Magistrate Judge issued an R&R recommending that the Court deny the motion for preliminary injunction on the basis that the Court lacks personal jurisdiction over the United States because the United States had not yet been served with Smith's summons and complaint. The Magistrate Judge went on to recommend, in the alternative, that the Court deny the request for preliminary injunctive relief on the merits because Smith failed to show he was likely to succeed on the merits of his claim and had not demonstrated a threat of irreparable harm. In an earlier order, the Magistrate Judge denied Smith's motion for appointment of counsel finding that Smith was able to articulate and argue his claims and communicate effectively with the Court, and therefore appointment of counsel was unnecessary.

Smith objects to the R&R's recommendation that his motion for preliminary injunction be denied on the merits. Smith also appeals from the order denying appointment of counsel, arguing that the complexity of his case warrants the appointment of counsel. With respect to the motion for preliminary injunction, the Court will reject the R&R's recommendation to deny the motion on the basis of lack of personal jurisdiction because the United States was served after the R&R was issued. The Court will, however, adopt the R&R to the extent it recommends denial of the motion on the

merits, because the Court concludes that Smith has failed to demonstrate entitlement to preliminary injunctive relief.  The Court will also affirm the Magistrate Judge's order denying Smith's motion for appointment of counsel, as the relevant considerations do not weigh in favor of appointing counsel for Smith at this time.

## BACKGROUND

### I.  SMITH'S ALLEGATIONS AND MEDICAL TREATMENT

On December 2, 2013, Smith initiated this action by filing a complaint against Defendants, alleging that Defendants failed to provide him with proper medical care while he was incarcerated.  (Compl., Dec. 2, 2013, Docket No. 1.)  On January 16, 2014, Smith filed an amended complaint which provided more factual and legal detail for the basis of his claims, specifically alleging that Defendants violated his constitutional rights to receive medical treatment pursuant to the Fifth and Eighth Amendment.  (Am. Compl. ¶ 1, Jan. 16, 2014, Docket No. 2.)[1]  Smith's amended complaint alleges deliberate indifference of Defendants related to Defendants' refusal to test Smith for possible venereal diseases (*id.* ¶¶ 51-67, 144); falsification of his medical records (*id.* ¶¶ 68-74, 143); refusal to conduct a cardiology stress test ("stress ECHO") to address Smith's concern with potential heart problems (*id.* ¶¶ 75-96, 145); and misdiagnosis and refusal to provide adequate information about the medical care being provided with respect to a lump on Smith's testicle (*id.* ¶¶ 104-30, 148).  Smith also alleges that Defendants failed

---

[1] The citations to paragraphs in Smith's Amended Complaint refer to the numbered paragraphs beginning on page 11.  All page references are to the CMECF pagination.

to provide him with adequate administrative procedures with respect to his attempts to obtain necessary medical treatment (*id.* ¶¶ 133-38, 150), that he was transferred from Minnesota to the Federal Correctional Institution in New York as retaliation for his complaints about his medical treatment (*id.* ¶¶ 140-42, 151). and that Defendants are liable for negligence in connection with providing, or failing to provide him with. medical treatment (*id.* ¶¶ 160-75).

Of particular relevance to the matters currently pending before the Court is Smith's claim regarding his alleged heart condition.  Smith alleges that on March 28, 2012, he was preparing to exercise in his cell and

> while doing warm-up exercises only, suddenly find[s] himself at odds when his heart erupts into a quickened and erratic manner resulting i[n] [Smith] feeling short of breath, and faint. [Smith] as he struggles to breathe, sits and begins to exercise controlled breathing techniques as he fights for consciousness.  After what felt like a marble pass[ed] through [Smith's] heart, experience ends.

(*Id.* ¶ 75.) The next day Smith saw Defendant Bennett from health services regarding this incident and asked him to perform an electrocardiogram ("EKG") test.  (*Id.* ¶ 76; Decl. of Paul T. Harvey, Attachment 4, Pt. 3 at 14, June 16, 2014, Docket No. 64.)  The EKG was performed and the results were normal.  (Am. Compl. ¶ 76; Harvey Decl., Attachment 4, Pt. 3 at 17.)  Smith was referred to a physician, and saw Defendant Dr. Mayer regarding his symptoms on April 12, 2012.  (Harvey Decl., Attachment 4, Pt. 3 at 9.)  Smith informed Dr. Mayer that he had experienced these types of symptoms five or six times since 2000, and that he still felt "strong and capable of exertional exercise." (Am. Compl. ¶ 77.)  Dr. Mayer ordered that Smith undergo a stress ECHO, which order the Utilization Review Committee ("URC") approved on April 17, 2012.

(*Id.* ¶ 78; Harvey Decl., Attachment 4, Pt. 3 at 8, 10; Exhibits at 5, Jan. 16, 2014, Docket No. 5.)

In July 2012 Smith learned that his stress ECHO had been cancelled and was told to notify his providers if his symptoms worsened or changed. (Am. Compl. ¶ 83; Harvey Decl., Attachment 4, pt. 3 at 3.) Medical records produced by Smith indicate that Defendant Dr. Harvey cancelled the stress ECHO after further review and finding that Smith's "labs were normal, the EKG was normal with no ectopy and the inmate is not overly symptomatic." (Exhibits at 6, Jan. 16, 2014, Docket No. 5.) Dr. Harvey also noted that Smith should be placed on a sports restriction and that "[i]f or when the inmate's signs or symptoms indicate the need for further clinical investigation we may p[u]rsue Cardiology Evaluation through the URC Committee." (*Id.*)

On September 12, 2012, Smith again saw Dr. Mayer and raised his concerns about "'palpitations' that have occurred while exercising in his cell." (Am. Compl. ¶ 88; Harvey Decl., Attachment 4, Pt. 2 at 12.) Smith reported that he had ceased his exercises and had experienced no more symptoms but was "unwilling to exercise 'out of fear' that something 'bad' is going to happen." (Harvey Decl., Attachment 4, Pt. 2 at 12.) Dr. Mayer recommended a stress ECHO, noting that such a test was "necessary to determine nature and validity of inmate's complaints." (*Id.*)

On September 26, 2012, Dr. Harvey again cancelled the stress ECHO, based on his previous determination regarding the necessity of the test and his observation that Smith's symptoms had not worsened or changed. (*Id.*, Attachment 4, pt. 2 at 9.) On November 6, 2012, Smith was called into health services to discuss his concerns about

the "palpitations." (Am. Compl. ¶ 96; Harvey Decl., Attachment 4, pt. 2 at 4.) A Dr. LaValley and another medical provider discussed with Smith that "physically there are no symptoms to warrant further evaluation into his condition" and the "he suffers from panic disorder and his symptoms are classic for that. Inmate obsesses over his health and is unable to be re-assured that nothing is wrong. He reports not working out x 8 months for 'fear' of palpitations." (Harvey Decl., Attachment 4, pt. 2 at 4.) In a note dated November 16, 2012, Dr. Harvey confirmed his previous conclusion that a stress ECHO was not clinically indicated at that time. (*Id.*, Attachment 4, pt. 2 at 2.)

## II.   PRELIMINARY INJUNCTION

### A.   Plaintiff's Motion

On January 16, 2014, Smith filed a motion for preliminary injunction requesting the Court "to grant such relief that the plaintiff be taken to a hospital and evaluated for reasons as stated in [the] Complaint, and thus be provided any recommended care and/or treatment resulting from such evaluation so as to ensure the safety, health and enjoyment to life of the plaintiff." (Mot. for Prelim. Inj. at 1-2, Jan. 16, 2014, Docket No. 4.) Specifically, Smith requests that the Court order Defendants "to arrange for an examination and a plan of treatment by a qualified cardiology specialist" and to order "a preliminary injunction requiring the defendant and/or employees of, to ensure that such plan of treatment is carried out." (First Decl. of John Smith ¶ 9, Jan. 16, 2014, Docket No. 6.)

With respect to the harm he will suffer in the absence of injunctive relief, Smith argues that "since the reporting of his heart condition, [he] **has not**, and for reasons of his

safety, engaged in the normal functions of playing sports and/or exercise dating back to march 28th 2012." (Mot. for Prelim. Inj. at 2 (emphasis in original).)  Smith also alleges that he is suffering "'irreparable harm' in the form of heart problems, genitalia, and potentially kidney[]s due [to] such falsifications of plaintiff's . . . medical records and reports which has ultimately . . . le[]d to plaintiff's non-treatment." (First Smith Decl. ¶ 5.)

### B. Report and Recommendation

On April 3, 2014, the Magistrate Judge issued an R&R recommending that the Court deny Smith's motion for preliminary injunction.  (R&R, Apr. 3, 2014, Docket No. 20.)  The Magistrate Judge began by noting that, in light of the nature of the relief sought, it was proper to construe Smith's motion as one "brought **only** against Defendant United States," and one related only to his Eighth Amendment deliberate indifference claims.  (*Id.* at 2 n.2, 3 n.5 (emphasis in original).)  The Magistrate Judge then recommended that the Court deny the motion for preliminary injunction on the basis that it lacks personal jurisdiction over the United States because, as of April 3, 2014, the United States had not yet been served with a summons and Smith's amended complaint. (*Id.* at 3-4.)  The Magistrate Judge went on to recommend, in the alternative, that the Court deny Smith's motion on the merits.  (*Id.* at 4-10.)  The Magistrate Judge first concluded that Smith had failed to show a likelihood of success on the merits of his Eighth Amendment claim related to his alleged heart condition because Smith's allegations amounted only to a disagreement over his course of treatment rather than a claim that officials knew of and disregarded his serious medical needs.  (*Id.* at 6, 9.)  The

Magistrate Judge then determined that Smith had failed to demonstrate irreparable harm because "the medical evidence presently before the Court appears to show that Plaintiff's EKG results were normal, and that his self-reported symptoms did not warrant a cardiac stress test," and rejected Smith's "subjective[] belie[f]" that Defendants had placed his health in jeopardy.  (*Id.* at 9-10.)  Smith now objects to the R&R's recommendation that his preliminary injunction be denied.  (Objections to R&R, Apr. 18, 2014, Docket No. 21.)

### III.   APPOINTMENT OF COUNSEL

On January 16, 2014, Smith filed a motion for appointment of counsel arguing that the Court should appoint counsel because "[t]here is a strong and reasonable chance that the plaintiff may need to be hospitalized and therefore, cannot proceed on with litigation with reasonable effectiveness" and because many of his rights are unknown to him due to the "complexities of the law."  (Mot. for Appointment of Counsel at 1-2, Jan. 16, 2014, Docket No. 8 (emphases and internal quotation marks omitted).)  The Magistrate Judge denied the motion finding that Smith "is able to articulate his claims, to argue his positions, and to communicate effectively with the Court," and had not demonstrated due to the possibility of later hospitalization "that he is **presently** unable to investigate and present his claims."  (Order at 2, Jan. 31, 2014, Docket No. 11 (emphasis in original).) Smith now appeals from this order, and requests that the Court appoint him counsel.

(Objections to Denial of Appointment of Counsel ("Appeal"), May 5, 2014, Docket No. 46.)[2]

## ANALYSIS

### I. PRELIMINARY INJUNCTION

#### A. Standard of Review

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and

---

[2] Typically appeals from a magistrate judge's nondispositive ruling must be filed within fourteen days after service of the order to be considered timely. *See* D. Minn. LR 72(a)(1). But "'the deadline for filing objections is not jurisdictional, and late-filed objections can be considered where the filing is not egregiously late and causes no prejudice to any adverse party.'" *United States v. Buchanan*, Civ. No. 07-50118, 2008 WL 2704865, at *2 (D.S.D. July 7, 2008) (quoting 32 Am. Jur. 2d Federal Courts § 145); D. Minn. LR 72.2(a)(3) (providing only that "[t]he district judge **must** consider timely objections" but not restricting the Court's ability to consider untimely objections, and expressly providing that "[t]he district judge may also reconsider on his or her own any matter decided by the magistrate judge but not objected to" (emphasis added)). Here, the Court finds that in light of the procedural history of Smith's requests for the appointment of counsel, his objections to the January 31, 2014 order which were filed on May 5, 2014, are not egregiously late. Specifically, prior to filing his appeal with the undersigned, Smith brought a motion to reconsider the request for appointment of counsel, which the Magistrate Judge denied. (Mot. to Reconsider, Apr. 24, 2014, Docket No. 25; Order, May 13, 2014, Docket No. 52.) On May 5, 2014, Smith also brought a secondary motion for appointment of counsel, which the Magistrate Judge denied. (Second Mot. for Appointment of Counsel, May 5, 2014, Docket No. 47; Order at 4-5, May 13, 2014, Docket No. 52.) Although these requests were not the proper way to achieve review of the Magistrate Judge's January 31 order denying his request for counsel, the Court finds that Smith's repeated efforts to obtain review suggest that the present objections are not egregiously late. Furthermore, in denying Smith's motion for reconsideration, the Magistrate Judge explicitly noted that denial was appropriate in part because "Plaintiff's appeal objection, [Docket No. 46], is currently pending before the Honorable John R. Tunheim." (Order at 2, May 13, 2014, Docket No. 52.) Therefore, because the Magistrate Judge's decision was based in part on the undersigned's consideration of Smith's appeal, it would be inequitable to refuse to address Smith's appeal on the merits as a result of its untimely filing. Finally, the Court can discern no prejudice that any party would suffer by the Court's consideration of late-filed objections concerning only Smith's entitlement to the appointment of counsel.

recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### B.  Standard Governing Injunctive Relief

The Court considers four factors in determining whether to grant preliminary injunctive relief: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. *S.J.W. ex rel. Wilson v. Lee's Summit R–7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

### C.  Smith's Objections

Smith objects to the R&R's conclusion that his request for a preliminary injunction be denied, on the basis that he has established both a likelihood of success on the merits and irreparable harm.[3] With respect to likelihood of success, Smith argues that

---

[3] The Court declines to adopt the R&R's recommendation that the motion for preliminary injunction be denied on the basis of lack of personal jurisdiction as a result of failure to serve the United States, because the United States was properly served with Smith's summons and amended complaint following the issuance of the R&R. (Summons Returned Executed, May 16, 2014, Docket No. 53.) Accordingly, the Court may now exercise personal jurisdiction over the United States, and will consider Smith's motion for preliminary injunction on the merits. The

(Footnote continued on next page.)

the Magistrate Judge erred in crediting the findings of Dr. Harvey because his decision to deny the stress ECHO was not "based off a legitimate medical judgment." (Objections to R&R at 2.) As for irreparable harm, Smith contends that several facts establish irreparable harm and the severity of his condition: (1) that he was provided with an EKG after the incident in his cell on March 28, 2012; (2) that multiple medical professionals referred Smith to outside consultants; (3) that Dr. Harvey had no knowledge of whether Smith's labs were normal on April 18, 2012, when he cancelled the stress ECHO, because Smith has produced a set of labs conducted on May 14, 2012; and (4) on September 12, 2012, Dr. Mayer recommended a stress ECHO. (*Id.* at 4-5, Attachment 1 at 2-3.) Smith concludes: "How can [Smith] not suffer irreparable harm if he is in fact suffering from a lasting infection that is now beginning to impact his heart as well as other major organs of the body?!" (*Id.* at 6.)

### 1. Irreparable Harm

The Court finds that Smith's allegations and medical records are insufficient to demonstrate irreparable harm. Irreparable harm is harm that is "certain and great and of

_____
(Footnote continued.)

Court also notes that typically, notice to the adverse party is required before the Court may grant a preliminary injunction. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."); *id.* 65(b) (explaining the limited circumstances under which courts may grant temporary injunctive relief). Because the Court concludes that Smith's claim fails on the merits it need not decide whether it would be appropriate to grant injunctive relief where, as here, Defendants have now received notice of the lawsuit but received such notice after the motion for preliminary injunction was filed and ruled on by the Magistrate Judge. *Cf. Davis v. Rozum*, Civ. No. 10-207, 2010 WL 4861352, at *1 (W.D. Pa. Nov. 23, 2010) (denying a motion for preliminary injunction where "none of the Defendants have been provided notice of this suit, much less this motion").

such imminence that there is a clear and present need for equitable relief." *S.J.W. ex rel. Wilson*, 696 F.3d at 778 (internal quotation marks omitted). Speculative harm or the mere possibility of harm is insufficient to warrant preliminary injunctive relief. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). In the context of requests for injunctive relief arising out of Eighth Amendment claims for medical treatment, courts have found no irreparable harm where a plaintiff "fail[s] to show that his condition will worsen if he is denied his requested relief immediately," *Rhinehart v. Scutt*, 509 F. App'x 510, 514 (6th Cir. 2013), or fails to provide any evidence "besides [a] bare assertion that he is at risk of serious injury or death," *Greywind v. Podrebarac*, 731 F. Supp. 2d 931, 934-35 (D.N.D. 2010).

Smith contends that he will suffer irreparable harm because his condition is serious – as evidenced by Defendants' ordering of an EKG and recommendation that he undergo a stress ECHO – and because of his belief that he is "suffering from a lasting infection that is now beginning to impact his heart as well as other major organs of the body." (Objections to R&R at 6.) But the evidence in Smith's medical records and in his own allegations shows that he suffered symptoms once on March 28, 2012, and has been non-symptomatic since that incident. This failure to show an existing problem or injury indicates that Smith is not facing irreparable harm based on Defendants' decision not to order a stress ECHO. *See Crawford v. Peikar*, Civ. No. 12-224, 2013 WL 3580639, at *2

(E.D. Ark. July 11, 2013) (finding that plaintiff had not demonstrated irreparable harm based on a fall where "x-rays and an MRI taken shortly after the . . . fall reveal no new or acute injuries"). Smith also does not dispute that his EKG showed normal heart function and multiple providers concluded that he has no existing physical condition or symptoms that warrant a stress ECHO. Smith has provided no evidence or even allegations of existing symptoms to contradict these findings and support his claim of medical exigency. *See McKeown v. Pacheko*, Civ. No. 10-1606, 2011 WL 1335199, at *2 (D.S.C. Mar. 21, 2011) (finding that plaintiff had failed to demonstrate that he would be irreparably harmed in the absence of injunctive relief where although he contended "that he will suffer mentally, emotionally, and physically, if he does not receive his antidepressants" he "submitted no proof of irreparable harm in the form of medical records, medical opinion, evidence of medical history, or otherwise to corroborate his claims of medical exigency").[4]

Additionally, the fact that Defendants took Smith's complaints seriously and ordered an EKG with an initial recommendation that he undergo a stress ECHO to rule out possible heart issues does not, as Smith contends, show that he is afflicted by a

---

[4] Smith's case is therefore in contrast to the types of cases where plaintiffs allege the existing or imminent health consequences of defendant's conduct with respect to plaintiff's medical treatment. *See, e.g.*, *Edmisten v. Werholtz*, 287 F. App'x 728, 733 (10th Cir. 2008) (finding prisoner had adequately alleged irreparable harm arising out of an Eighth Amendment medical treatment claim where he alleged that "[s]ince the removal of the prosthesis and the defendants' ensuing failure to follow Dr. Kent's order for a follow-up visit, Mr. Edmisten has lost all movement and function in his jaw; can only eat solid food by swallowing it whole, which he later vomits; cannot speak clearly; is more disfigured; and suffers chromic pain. He also contends that if he does not have the new prosthesis installed soon, there is an increasing risk that the procedure could not be performed at a later date.").

serious heart condition or that his condition is currently worsening. Instead Smith's medical records demonstrate that Defendants continued to conduct follow-up regarding Smith's conditions and noted they would order a stress ECHO if Smith's symptoms changed. *See Greywind*, 731 F. Supp. 2d at 934-35 ("Greywind alleges in his affidavit, 'That there is an eminent danger of the infection entering my blood stream and causing death, and therefore must be promptly and professionally treated.' However, Greywind's NDSP patient profile shows he was given the antibiotic amoxicillin as recently as March 11, 2010. Dr. Podrebarac also asserts he and NDSP staff have continued to treat Greywind's infected tooth with antibiotics and analgesics. Thus, the record indicates any infection Greywind may be suffering was being treated at the time he filed his motion."); *Jones v. Norris*, Civ. No. 07-291, 2008 WL 687375, at *2 (E.D. Ark. Mar. 11, 2008) (finding a failure to show irreparable harm where plaintiff alleged that defendants failed to provide him with adequate medical care and treatment for a litany of medical problems but medical records provided to the court showed that plaintiff had "been provided medical care and treatment on numerous occasions" and failed "to allege sufficient specific facts . . . which would support a finding of irreparable harm").

Finally, the Court notes that Smith's claim of irreparable harm and exigency are further weakened by the fact that he learned in July 2012 that Defendants would not be ordering a stress ECHO, and yet waited until January 16, 2014, to file his motion for injunctive relief, without identifying any changes in the circumstances of his alleged heart condition. *See Novus Franchising v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (affirming district court's finding that movant failed to show irreparable harm based in

part on movant's "failure to seek injunctive relief for a period of seventeen months after Dawson quit paying royalties"); *CHS, Inc. v. PetroNet, LLC*, Civ. No. 10-94, 2010 WL 4721073, at *3 (D. Minn. Nov. 15, 2010) (denying a request for injunctive relief where plaintiff waited more than eight months to file for an injunction after knowing of the alleged behavior giving rise to an injury, explaining "that delay in seeking relief 'vitiates much of the force of . . . allegations of irreparable harm'" (quoting *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977)). For all of these reasons, the Court concludes that Smith has failed to show any irreparable harm that will result if the Court does not order Defendants to immediately provide Smith with an examination by a cardiologist. Because the failure to show irreparable harm is itself a sufficient ground for denial of injunctive relief, *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003), the Court will deny Smith's motion for a preliminary injunction.

### 2. Balance of Harms

Although failure to show irreparable harm alone warrants denial of Smith's motion, *see Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996), the Court additionally concludes that the balance of harms here weighs in favor of Defendants. The Eighth Circuit has recognized that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks omitted); *Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 993 (D.S.D. 2011) ("There

is a tension between the need to protect constitutional rights and the longstanding policy of judicial restraint regarding issues of prison administration.").

Here, the only concrete harm Smith has identified is that "since the reporting of his heart condition, [he] **has not**, and for reasons of his safety, engaged in the normal functions of playing sports and/or exercise dating back to march 28th 2012." (Mot. for Prelim. Inj. at 2 (emphasis in original).) The harm Smith will suffer by being unable to engage in sports and exercise until the merits of this lawsuit are resolved does not outweigh Defendants' interest in managing the provision of medical treatment to inmates without court supervision each time an inmate believes a particular type of medical test is warranted. *See Greywind*, 731 F. Supp. 2d at 936-37 (analyzing the public interest factor and finding that prison officials' "discretion in implementing and enforcing policies regarding medical treatment of inmates" weighed in favor of denying plaintiff's request for a preliminary injunction). Therefore, the Court concludes that the balance of harms also weighs in favor of denying Smith's request for preliminary injunctive relief.

## II. MOTION TO APPOINT COUNSEL

Smith also appeals from the Magistrate Judge's order denying his motion to appoint counsel. Smith argues that appointment of counsel is necessary because Defendant Dr. Mayer has stated that an expert affidavit is required for Smith's state law claims of negligence (*see* Answer ¶ 17, Mar. 20, 2014, Docket No. 16), and that Smith is therefore "put at an unfair disadvantage" due to the "burden of having to present legal arguments that are beyond his capacity to understand – much less present – in opposition to the demands of the Defendant." (Appeal at 1-2.)

A.  **Standard of Review**

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).[5] This Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn*, 254 F.R.D. 554, 556 (D. Minn. 2008) (internal quotation marks omitted).

B.  **Appointment of Counsel**

There is no constitutional or statutory right to the appointment of counsel in civil cases. *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). In considering a motion to appoint counsel

---

[5] Motions to appoint counsel are nondispositive motions, subject to the standard of review identified in 28 U.S.C. § 636(b)(1)(A). *See In re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986) (noting that a decision not to appoint counsel was a nondispositive, pretrial motion); *see also Webb v. Flowers*, Civ. No. 13-719, 2014 WL 169880, at *1 (E.D. Ark. Jan. 14, 2014) (characterizing motion for appointment of counsel as "nondispositive").

> [t]he trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim.

*Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996).

The Court concludes that the Magistrate Judge did not err in finding that these factors do not weigh in favor of appointing counsel for Smith. Specifically, the Magistrate Judge found that neither the facts nor the legal issues raised in Smith's amended complaint are so complex that appointment of counsel is warranted. Smith alleges a relatively straightforward claim based on Defendants' failure to provide him with requested medical treatment that is premised on a discrete set of facts. Furthermore, in the numerous documents filed in this case to date, Smith has demonstrated an ability to clearly articulate the relief he seeks and the factual basis for his claims, present evidence in support of those claims, and comply with Court orders and the Local Rules. (*See, e.g.* Docket Nos. 54-59.) The Court further concludes that the single issue raised by Smith in his appeal regarding Dr. Mayer's answer indicating that Smith's claims for negligence should be dismissed in the absence of service of an expert affidavit does not change its conclusion that appointment of counsel is not warranted. In his appeal Smith has raised arguments to the effect that he need not provide an expert affidavit. These arguments demonstrate that, although Smith is not trained in the law, he has a sufficient grasp of the issues to communicate his arguments to the Court such that appointment of counsel would not benefit the Court and Smith at this time. Accordingly, the Court will affirm the Magistrate Judge's denial of Smith's motion for appointment of counsel.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 21] and **ADOPTS in part** and **REJECTS in part** the Report and Recommendation of the Magistrate Judge dated April 3, 2014 [Docket No. 20].  The Court **ADOPTS** the recommendation section, and **ADOPTS in part** and **REJECTS in part** the report section as stated in this Order.  Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction [Docket No. 4] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that Plaintiff's objections [Docket No. 46] to the Order of the Magistrate Judge dated January 31, 2014  [Docket No. 11] are **OVERRULED.**  Accordingly, the Order of the Magistrate Judge dated January 31, 2014  [Docket No. 11]  is **AFFIRMED**.

DATED:  August 8, 2014
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge