## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

_____

John Smith,

               Plaintiff,                    Court File No. 13-cv-3277 (JRT/LIB)

   v.                                        **ORDER AND**
                                **REPORT AND RECOMMENDATION**

United States of America, et al.,

               Defendants.

_____

      This matter came before the undersigned United States Magistrate Judge upon Plaintiff John Smith's ("Plaintiff") Motion to Amend his Amended Complaint, [Docket No. 54], the Federal Defendants'[1] Motion to Dismiss or, in the alternative, for Summary Judgment, [Docket No. 60], and Defendant Thomas Mayer's Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72].  The case has been referred to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

      For reasons outlined below, the Court will **DENY** Plaintiff's Motion to Amend his Amended Complaint, [Docket No. 54]; the Court subsequently recommends that Defendant Mayer's Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72], be **GRANTED**; and the Federal Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, [Docket No. 60], be **GRANTED**.

---

[1] The Federal Defendants include Nurse Practitioner Pete Bennett, Health Services Administrator Barbara Mock, Warden Scott Fisher, Regional Medical Director Paul Harvey, National Inmate Appeals Director Harrell Watts, and the United States of America.

## I.    BACKGROUND

On December 2, 2013, Plaintiff initiated this action by filing a *pro se*[2] complaint, alleging that Defendants had failed to provide him with proper medical care while he was incarcerated at the Federal Correctional Institution located in Sandstone, Minnesota ("FCI Sandstone"). (Compl., [Docket No. 1]). On January 16, 2014, Plaintiff filed an amended complaint that is the operative complaint in the present case. (Am. Compl. [Docket No. 2.]).

Plaintiff alleges that Defendants were deliberately indifferent by refusing to test him for possible venereal diseases (Id. ¶¶ 51-67, 70-74, 144, 146); falsifying Plaintiff's medical records (Id. ¶¶ 68-69, 86-87, 143, 145); refusing to authorize a cardiology stress test ("stress-echo test") for Plaintiff (Id. ¶¶ 75-96, 145, 147, 150); and misdiagnosing and refusing to provide adequate information about the medical care being provided with respect to a lump on Plaintiff's testicle (Id. ¶¶ 104-30, 148).  Plaintiff also alleges that Defendants failed to provide him with qualified medical staff capable of providing him with adequate medical care (Id. ¶¶ 133-38, 149); that Defendants transferred Plaintiff from FCI Sandstone to the Federal Correctional Institution in Otisville, New York ("FCI Otisville") in retaliation for Plaintiff's complaints about his medical treatment (Id. ¶¶ 140-42, 151); and that Defendants are liable for negligence in connection with providing, or failing to provide him with medical treatment (Id. ¶¶ 152-75).

On June 13, 2014, Plaintiff filed the present Motion to Amend his Amended Complaint, [Docket No. 54].  In his motion, Plaintiff states that he seeks to add a claim against the Federal Bureau of Prisons. (See Id. at 1).  Plaintiff's proposed second amended complaint, however, also seeks to clarify the legal and factual bases for some of his claims and add two state law

---

[2]Because Plaintiff is proceeding *pro se*, the Court must read the content of his pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

negligence claims against Defendant Thomas Mayer ("Defendant Mayer").   (See Motion to Amend to Compl., [Docket  No. 54], Attachment 1, ¶¶ 219, 236, 240, 244, 248-255).

On June 16, 2014, the Federal Defendants filed their Motion to Dismiss, or in the alternative, for Summary Judgment, [Docket No. 60].  The Court allowed Plaintiff until July 21, 2014, to file a response to the Federal Defendants' motion. (Order, [Docket No. 67] at 1). Plaintiff has not filed a response.

On June 30, 2014, Defendant Mayer filed his Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72].  The Court allowed Plaintiff until July 28, 2014, to file a response to Defendant Mayer's motion. (Order, [Docket No. 78] at 1).  Plaintiff has not filed a response to Defendant Mayer's motion either.

## II.   STATEMENT OF FACTS

This Bivens[3] action arises from three incidents related to Plaintiff's medical treatment while he was confined at FCI Sandstone. (Am. Compl., [Docket No. 2], ¶ 20).

With regards to the first incident, Plaintiff maintains that, in 1996, he contracted gonorrhea and chlamydia. (Am. Compl., [Docket No. 2], ¶ 51). In 2010, Plaintiff became concerned that he was experiencing symptoms associated with those infections not having been adequately treated. (Id.). On December 7, 2010, Plaintiff informed Defendant Pete Bennett ("Defendant Bennett"), a Public Health Service Nurse Practitioner working at FCI Sandstone, (see Declaration of Capt. George Durbin, [Docket No. 62], ¶¶ 3-4), about his concerns. (Am. Compl., [Docket No. 2], ¶ 52).   On January 6, 2011, Plaintiff was questioned by Defendant Mayer, a private physician contracted by a private corporation to provide health care services to FCI Sandstone inmates, (see Affidavit of Tamara Healy, [Docket No. 75], ¶¶ 4-5), about his concerns. (Am. Compl., [Docket No. 2], ¶ 55).  Plaintiff was also examined on that date by

---

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Defendant Bennett.  (Id.).  Defendant Mayer told Plaintiff that the results of the examination did not warrant further testing for gonorrhea or chlamydia.  (Id.).  Plaintiff then filed a complaint through the FCI Sandstone grievance process, seeking to be tested for gonorrhea and chlamydia. (See Id. at ¶¶ 29).

On February 3, 2011, pursuant to Defendant Bennett's request, Plaintiff submitted a urine sample for analysis. (Id. at ¶ 59). On February 10, 2011, Plaintiff was informed that the analysis had revealed the presence of red blood cells in his urine.  (Id. at ¶ 61).  Defendant Bennett ordered a follow-up urinalysis.  (See Id. at ¶64).  On April 7, 2011, Defendant Barbara Mock ("Defendant Mock"), the Health Services Administrator for FCI Sandstone, (see Declaration of Capt. George Durbin, [Docket No. 62], ¶¶ 3-4), provided Plaintiff with a copy of the results of the second urinalysis.  (Am. Compl., [Docket No. 2], ¶ 68).  Plaintiff suspects Defendant Mock falsified the report of the urinalysis results, at least in part because the report incorrectly indicated the urine sample has been collected using a catheter.  (Id. at ¶¶ 2, 68). Concerned that a urinalysis would not detect gonorrhea or chlamydia, Plaintiff continued to use FCI Sandstone's grievance procedure seeking the administration of a urethral swab test. (See Id. at ¶¶ 35, 71).  On May 11, 2011, Defendant Bennett offered Plaintiff a course of antibiotics "as a form of resolution." (See Id. at ¶ 70).  When Plaintiff refused, Defendant Bennett administered the requested urethral swab test to Plaintiff in a manner that Plaintiff suspected was inadequate. (See Id. at ¶ 72).

With regard to the second incident, Plaintiff maintains that, while doing warm up exercises in his cell on March 28, 2012, his heart began to beat quickly and erratically, and that he felt both short of breath and faint.  (Id. at ¶ 75).  Defendant Bennett administered an electrocardiograph (EKG) test to Plaintiff the next day. (Id. at ¶ 76).  The results of that test were

normal. (Id.).   On April 12, 2012, Plaintiff was interviewed by Defendant Mayer, who questioned him about the March 28th incident. (Id. at 77). Plaintiff told Defendant Mayer that he had experienced five or six similar since 2000. (Id.).   Defendant Mayer confirmed that an EKG had been completed and then filed a request for authorization for Plaintiff to be given a stress-echo test to see if Plaintiff's symptoms could be reproduced.   (See Id. at ¶¶ 42, 44, 78).

Requests for authorization of specialized medical procedures for the inmates of FCI Sandstone are handled by the Utilization Resource Committee ("URC"), which is headed by the Acting Clinical Director of FCI Sandstone. (See Id. at ¶21). On April 17th, 2012, Plaintiff was informed that Defendant Harvey, as the Regional Medical Director and Acting Clinical Director for FCI Sandstone, had authorized a stress-echo test.   (Id., ¶¶ 21, 78).

On July 11, 2012, Plaintiff was verbally informed that Defendant Harvey had revoked authorization for the stress-echo test. (Id. at ¶ 81).   Defendant Mock later provided Plaintiff with an administrative note indicating that Defendant Harvey had denied authorization for a stress-echo test, which contained a reference to an administrative note dated April 18, 2012. (Id. at ¶ 83).   Plaintiff later viewed the referenced April 18, 2012, administrative note in his medical file, which memorialized Defendant Harvey's decision to revoke authorization for the stress-echo. (Id. at ¶ 84).   Plaintiff alleges that Defendant Harvey falsified a statement in the April 18, 2012, administrative note that indicated Plaintiff's "labs were normal" for the purpose of denying Plaintiff medical care. (Id. at ¶ 85).

Believing at the time that Defendant Harvey had denied authorization for the stress-echo text because of discrepancies in the manner in Plaintiff's history of coronary incidents, Plaintiff again met with Defendants Mayer and Bennett on September 12, 2012, to again report his medical history.   (Id. at ¶¶ 86-88).   During that meeting, Defendant Mayer inquired whether

Plaintiff would be willing to be placed on an event monitor. (Id. at ¶ 88).  Plaintiff agreed and left the meeting expecting to be placed on an event monitor. (Id. at ¶ 89). On October 18, 2012, Plaintiff received a notice indicating that authorization for an event monitor test had been denied by the URC. (Id.).

That same day, Plaintiff filed a complaint through the FCI Sandstone grievance process, seeking the administration of a stress-echo exam.  (See Id. at 41-42).  On November 27, 2012, Defendant Scott Fisher ("Defendant Fisher"), the FCI Sandstone Warden, denied the complaint. (Id. at ¶ 43).  On December 3, 2012, Plaintiff filed an appeal to the Regional Medical Director, which was also denied. (Id. ¶¶ at 44-45).  On January 7, 2013, Plaintiff appealed that denial to the central office of the Health Services Division of the Bureau of Prisons.  (Id. at ¶ 46).  On December 4, 2013, Plaintiff received a response indicating that Defendant Harrell Watts ("Defendant Watts"), National Inmate Appeals Administrator for the Federal Bureau of Prisons, (see Declaration of Harrell Watts [Docket No. 65], ¶ 1), had denied the appeal. (Am. Compl., [Docket No. 2], ¶ 48).

With regard to the third incident, Plaintiff maintains that, on January 22, 2013, he discovered a lump on his right testicle.  (Id. at ¶ 104). On January 30, 2013, Defendant Bennett examined the lump and ordered an ultrasound test that was later administered by a radiologist at an outside medical facility.  (Id. at ¶ 107-08).  On February 19, 2013, Defendants Mayer and Bennett read Plaintiff the test results and informed him that the lump was located next to his epididymis, which is consistent with it being a spermatocele. (Id. at ¶ 110).  A further physical examination that day revealed that Plaintiff also had a second lump on his testicle.  (Id.). Defendant Mayer informed Plaintiff at that time that further treatment would not be ordered

because "[They] don't treat this condition." (Id.).   Plaintiff alleges that the diagnosis was incorrect and was not consistent with his symptoms.  (Id. at ¶ 111).

On April 22, 2013, Plaintiff was transferred to FCI Otisville. (Id. at ¶139).   Plaintiff asserts that Defendant Fisher transferred Plaintiff in retaliation for complaining about his medical care. (Id. at ¶ 151).  Plaintiff then filed the present action.

Against Defendant Bennett, Plaintiff alleges a claim of deliberate indifference for offering Plaintiff antibiotics on May 11, 2011, instead of a urethral swab and by failing to properly perform the urethral swab test. (Id. at ¶ 144).

Against Defendant Mayer, Plaintiff alleges claims of deliberate indifference for intentionally denying Plaintiff medical care on September 12, 2012, and for ignoring the results of the ultrasound test when intentionally misdiagnosing Plaintiff on February 19, 2013. (Id. at ¶¶ 146, 148).

Against Defendant Mock, Plaintiff alleges two claims of deliberate indifference for falsifying his medical records on April 7, 2011, and for denying Plaintiff a stress-echo exam on October 16, 2012. (Id. at ¶¶ 143, 147).

Against Defendant Fisher, Plaintiff alleges a claim of deliberate indifference for failing to provide Plaintiff with staff capable of providing him with medical care, and a claim of retaliation for transferring Plaintiff to FCI Otisville. (Id. at ¶ 149, 51).

Against Defendant Harvey, Plaintiff alleges a claim of deliberate indifference for falsifying a medical record on April 18th, 2012, for the purpose of denying him a stress-echo exam. (Id. at 145).

Against Defendant Watts, Plaintiff alleges a claim of deliberate indifference for denying his appeal to the denial of a stress echo-exam. (Id. at ¶ 150).

Against Defendant United States, Plaintiff alleges state law claims of negligence for failing to provide a reasonable course of treatment: 1) when a Defendant falsified his medical records, (Id. at ¶¶ 152-55); 2) for his venereal infection (Id. at ¶¶ 156-59); 3) for his heart condition when a Defendant falsified his medical records, (Id. at ¶¶ 160-63); 4) when Defendants intentionally denied his request for a stress-echo exam (Id. at ¶¶ 163-67); 5) for Plaintiff's medical needs, (Id. at ¶¶ 168-171); and 6) for his heart condition, (Id. at ¶¶ 172-175).

Plaintiff now brings the present Motion to Amend his Amended Complaint, [Docket No. 54]. The Federal Defendants bring a Motion to Dismiss or, in the alternative, for Summary Judgment. (Defs.' Motion to Dismiss [Docket No. 60]). Defendant Mayer brings a Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72].

The Court first considers the Motion to Amend the Amended Complaint, [Docket No. 54]. See Augustine v. United States, No. 13-cv-1417 (DWF/LIB), 2014 U.S. Dist. LEXIS 35517, at *11-12 (D. Minn. Feb. 20, 2014) (Brisbois, M.J.) ("Eighth Circuit case law provides that courts should consider motions to amend prior to ruling on motions to dismiss.") (citing Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 955-56 (8th Cir. 2002)), adopted by, 2014 U.S. Dist. LEXIS 33148 (D. Minn. Mar. 14, 2014) (Frank, J.).

### III.   PLAINTIFF'S MOTION TO AMEND THE AMENDED COMPLAINT [Docket No. 54].

Plaintiff moves the Court for leave to amend the operative complaint in a number of respects: 1) to add a deliberate indifference Bivens claim against the Federal Bureau of Prisons (See Motion to Amend Am. Compl. [Docket No. 54], Attachment 1, ¶ 219); 2) to amend his state law negligence claim alleging failure to provide reasonable treatment for his heart condition to name Defendant Harvey instead of the United States (see Id. at ¶¶ 236-37); 3) to amend his state

law negligence claim alleging deliberate indifference by denying a stress-echo test to name Defendant Mock instead of the United States (see Id. at ¶¶ 240-41); 4) to amend his state law negligence claim alleging failure to provide treatment for his medical needs to name Defendant Bennett instead of the United States (see Id. at ¶¶ 244-45); 5) to add a state law negligence claim against Defendant Mayer alleging he impeded Plaintiff's access to a reasonable course of medical treatment (see Id. at ¶¶ 248-51); and 6) to add a second state law negligence claim against Defendant Mayer alleging he purposely avoided evidence in misdiagnosing Plaintiff (see Id. at ¶¶ 252-55).

For the following reasons, the Court will **DENY** Plaintiff's Motion to Amend the Amended Complaint,[Docket No. 54].

### A.      Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the opposing party's written consent or the court's leave, and Rule 15 instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008), the Court begins its review "with a presumption of liberality." DeRoche v. All Am. Bottling Corp., 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998).

However, a party may successfully challenge a motion to amend pleadings on grounds of futility if the claims created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. See Cornelia I. Crowell GST Trust v. Possis Medical, Inc., 519 F.3d 778, 782 (8th Cir. 2008).   To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (citing Twombly, 550 U.S at 557).

The Court must undertake the "context-specific task" of determining whether the moving party's allegations "nudge" its claims against the defendants "across the line from conceivable to plausible." See Iqbal, 556 U.S. 679-81. The moving party must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

However, in applying the motion to dismiss standard in ruling on a motion to amend under a Rule 15(a) futility analysis, courts generally do not weigh the substance of the proposed amended pleadings to the same extent as would be appropriate on a Rule 12(b)(6) motion. Streambend Properties III, LLC v. Sexton Lofts, LLC, No. 10-cv-4745 (MJD/SER), 2014 WL

316895, at *6 (D. Minn. Jan. 28, 2014) (citing <u>Birchwood Labs., Inc. v. Battenfeld Techs., Inc.</u>, 762 F. Supp. 2d 1152, 1156 (D. Minn. 2011) (MJD/JJK)).

### B.    Analysis

The Court addresses each of Plaintiff's proposed amendments in turn.

### 1.    Amendment to Add Bureau of Prisons as a Defendant

Plaintiff's first discrete proposed amendment seeks to add a claim of deliberate indifference against the Federal Bureau of Prisons.  Defendants argue that adding the Federal Bureau of Prisons as a defendant would be futile.  The Court agrees.  "<u>Bivens</u> allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations." <u>Patel v. U.S. Bureau of Prisons</u>, 515 F.3d 807, 812 (8th Cir. 2008) (citing <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP.")).  As the Federal Bureau of Prisons is not a proper defendant in a <u>Bivens</u> action, amending the operative complaint to add a claim against the Federal Bureau of Prisons would be futile.  Accordingly, the Court will **DENY** Plaintiff's Motion to Amend his Amended Complaint, [Docket No. 54], to the extent the motion seeks to add a claim against the Federal Bureau of Prisons.

### 2. Amendments to Name Defendants Harvey, Mock, and Bennett as Defendants in State Law Negligence Claims

Plaintiff's second, third, and fourth discreet proposed amendments all similarly seek to name a different individual Defendant in place of the United States in three of Plaintiff's state law negligence claims.  The Federal Defendants contend it would be futile to allow the amendments because Plaintiff's claims would be dismissed on one of the legal bases asserted in their Motion to Dismiss or, in the alternative, for Summary Judgment, [Docket No. 60].

In Minnesota, "the four elements of negligence are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury." Engler v. Illinois Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005) (citing Funchess v. Cecil Newman Corp., 632 N.W.2d 666, 672 (Minn. 2001)). With regards to the duty of care, injury, and causation elements of each of those state law negligence claims, Plaintiff's proposed second amended complaint fails to allege anything other than formulaic recitations of the elements of a negligence claim that are unsupported by any factual assertions. Such formulaic recitations are insufficient to survive a motion to dismiss. See Iqbal, 556 U.S. at 678. As such, it would be futile to amend the pleadings with regard to those claims to name a different individual Defendant in place of the United States. Accordingly, the Court will **DENY** Plaintiff's Motion to Amend his Amended Complaint, [Docket No. 54], to the extent the motion seeks to amend those state law negligence claims to substitute a different individual Defendant in place of the United States.

### 3. Amendment to Add State Law Negligence Claims against Defendant Mayer

Plaintiff's remaining proposed amendments both seek to add state law negligence claims against Defendant Mayer, first for impeding Plaintiff's access to medical care, and second for avoiding evidence when diagnosing the lump on Plaintiff's testicle. Defendant Mayer contends it would be futile to allow the amendments because Plaintiff's proposed claims are medical negligence claims and do not comply with the requirements for filing such claims under Minn. Stat. § 145.682.

The proposed state law negligence claims Plaintiff seeks to add against Defendant Mayer similarly fail to allege anything other than formulaic recitations of the duty of care, injury, and causation elements of negligence that are unsupported by any factual allegations. Such

formulaic recitations are insufficient to survive a motion to dismiss. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678. As such, it would be futile to amend Plaintiff's amended complaint to add those two state law negligence claims against Defendant Mayer.  Therefore, the Court will **DENY** Plaintiff's Motion to Amend his Amended Complaint, [Docket No. 54], to the extent the motion seeks to add new state law negligence claims against Defendant Mayer.

**IV.   DEFENDANT MAYER'S MOTION FOR SUMMARY JUDGMENT AND /OR STATUTORY DISMISSAL PURSUANT TO MINN. STAT. § 145.682, [Docket No. 72].**

Defendant Mayer's Motion is captioned and drafted to serve as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and a motion for statutory dismissal pursuant to Minnesota Statute § 145.682.  For the following reasons, the Court recommends that Defendant Mayer's Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72], be **GRANTED**.

The evidence in the record presently before the Court indicates that Defendant Mayer is not an employee of the Federal Government, but rather a private physician who has been contracted through a private company to provide medical services to the inmates of FCI Sandstone.  (Affidavit of Tamara Healy, [Docket No. 75], ¶¶ 4-5). The Supreme Court has held that a plaintiff cannot maintain a <u>Bivens</u> action against a private citizen where state law provides an adequate alternative tort action.  <u>See</u> <u>Flores v. United States</u>, 689 F.3d 894, 903 (8th Cir. 2012) (citing <u>Minneci v. Pollard</u>, 132 S.Ct. 617, 620 (2012)).  In addition, the Eighth Circuit has held that a prisoner may not maintain a <u>Bivens</u> action against a private physician hired through a private corporation to provide medical services to inmates of a federal prison, because Minnesota law provides adequate alternative tort actions.  <u>Id.</u>   Therefore, Defendant Mayer is entitled to

13

summary judgment as a matter of law on Plaintiff's <u>Bivens</u> claims against him because Plaintiff may not maintain a <u>Bivens</u> action against him.

Assuming, for the sake of argument, that the Court would construe Plaintiff's <u>Bivens</u> deliberate indifference claims against Defendant Mayer under the liberal pleading standard for *pro se* plaintiffs as supplementary state law claims, dismissal would still be warranted. Plaintiff's claims against Defendant Mayer are, in essence, allegations of medical malpractice. Minn. Stat. § 145.682 applies to all medical malpractice actions brought in Minnesota.

In pertinent part, Minn. Stat. § 145.682 requires every plaintiff in a Minnesota medical malpractice case against a health care provider, like Defendant Mayer, to furnish two affidavits in support of his claims. These two affidavits have been described as follows:

> The first affidavit ('expert review affidavit') *must be submitted with the complaint* and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff....

> The second affidavit ('expert disclosure affidavit') must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion.

<u>Bellecourt v. United States</u>, 784 F. Supp. 623, 636 (D. Minn. 1992) (citing Minn. Stat. § 145.682, Subds. 2-4) (emphasis added).  If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal." Minn. Stat. § 145.682, Subd. 6; <u>Stroud v. Hennepin County Medical Center</u>, 556 N.W.2d 552 (Minn. 1996); <u>see also</u> <u>Stackhouse v. United States</u>, No. 09–839 (PJS/JSM) (D.Minn. 2011) (Report and Recommendation dated February 11, 2011, adopted by Order dated March 1, 2011), 2011 WL 820885 at *24, ("[t]he penalty for failing to comply with Minn. Stat. §

145.682, Subds. 2 and 4 is mandatory dismissal").  Plaintiff has failed to submit either affidavit required by Minn. Stat. § 145.682, Subds. 2 or 4.

A plaintiff may be excused from the statutory affidavit requirements, provided the defendant's liability can be established without any expert testimony, e.g., expert testimony presumably would not be required to establish negligence regarding a surgeon who amputated the clearly wrong limb. Minn. Stat. § 145.682, Subd. 2; Bellecourt, 784 F.Supp. at 637.  In the present case, however, it is *not* self-evident that Defendant Mayer committed any medical malpractice.

"In actions against health-care providers, a prima facie case of malpractice is established by showing '(1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a direct cause of the plaintiff's injuries.'" McDonough v. Allina Health System, 685 N.W.2d 688, 697 (Minn. App. 2004) (quoting Fabio v. Bellomo, 504 N.W.2d 758, 762 (Minn. 1993)).  "Expert testimony is generally required in medical-malpractice cases because they involve complex scientific or technological issues . . . . An exception to this rule applies when the alleged negligent acts are within the general knowledge or experience of laypersons . . . . But only rarely does section 145.682 not apply." Mercer v. Andersen, 715 N.W.2d 114, 122 (Minn. App. 2006) (internal citations omitted).

Accordingly, the Court recommends that Defendant Mayer's Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72], be **GRANTED**.

## V.       FEDERAL DEFENDANTS' MOTION TO DISMISS, [DOCKET NO. 60]

In support of their Motion to Dismiss, the Federal Defendants contend dismissal is appropriate, arguing 1) some of the Defendants are immune from suit; 2) some of the Defendants are entitled to qualified immunity for their actions; 3) some of the Defendant cannot be held liable for the actions of their subordinates because the principle of *respondeat superior* does not exist in Bivens actions; 4) Plaintiff has failed to exhaust his administrative remedies with regard to several of his claims; 5) the Court lacks personal jurisdiction over Defendant Watts; and 6), Plaintiff has failed to state claims upon which relief may be granted, pursuant to Rule 12(b)(6). (See Defs.' Memorandum in Support of Motion, [Docket No. 61] at 2).

For the following reasons, the Court recommends that the Federal Defendants' Motion to Dismiss, [Docket No. 60], be **GRANTED**.

### A.       Standard of Review – Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."  Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

As discussed above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and

citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

**B.    Analysis**

Plaintiff alleges that the Federal Defendants, acting under color of law, violated his rights under the Fifth and Eighth Amendments by being deliberately indifferent to his need to receive medical care. (Amended Compl. [Docket No. 2], ¶¶ 1-7, 143-51).   Plaintiff also alleges the United States was liable under state law for its negligence with regard to each challenged action of the other Federal Defendants. (Id. at ¶¶ 9, 152-75).  The Court first addresses the Defendant's challenge to the Court's personal jurisdiction over Defendant Watts. The Court then addresses the claims against each of the remaining Defendants separately.

**i.    Personal Jurisdiction over Defendant Watts**

Defendants contend that the Court must dismiss the claim against Defendant Watts, arguing the Court does not have personal jurisdiction over him.  "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks and citations omitted). The evidentiary showing required at the prima facie state is minimal and is

determined by considering the pleadings and the affidavits and exhibits relating to the motion. The Court views "the evidence in the light most favorable to the plaintiff and resolve[s] all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." Id. (citation omitted).

Courts use a two-step analysis to determine whether a court may properly exercise personal jurisdiction over a defendant. Myers v. Unknown Unidentified Mailroom Pers. of Bureau of Prisons Mailroom Staff at FCI-Englewood, CIV. 13-3644 PAM/JJK, 2014 WL 2818669 (D. Minn. June 18, 2014) (citing Northrup King v. Compania Productora Semillas, 51 F.3d 1383, 1387 (8th Cir. 1995)).   The Court first considers whether personal jurisdiction is proper under the law of the forum state, specifically "whether jurisdiction exists under the state's 'long-arm statute.'" Id.   "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." Id.   In Minnesota, "[t]hese two inquiries collapse into one . . . because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause." Lexion Med., LLC v. SurgiQuest, Inc., CIV. 13-2453 RHK/FLN, 2014 WL 1260761 (D. Minn. Mar. 26, 2014) (citations omitted).

"Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K-V Pharm., 648 F.3d at 592 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985)). A "defendant must have engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "This purposeful-availment requirement is met where the 'defendant's conduct and connection with the

forum State are such that he should reasonably anticipate being haled into court there.'" Id. (citations omitted).

The Eighth Circuit has identified factors the Court must consider when determining if an individual has sufficient minimum contacts with a forum State:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

Id. "[T]he first three factors are primary factors, and the remaining two are secondary factors[.]" Id. The Court, however, examines all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists. Id.

Neither Plaintiff nor Defendant Watts currently reside in Minnesota. (See Declaration of Harrell Watts, [Docket No. 65], ¶ 6). Plaintiff's sole allegation that Defendant has had any contact with the State of Minnesota consists of Defendant Watt's denial of Plaintiff's appeal of the refusal of authorization for Plaintiff to get a stress-echo examination in Minnesota. Defendant Watt's denied Plaintiff's appeal while in his office in Washington, D.C. (Id.). As neither of the pertinent parties are residents of Minnesota, it would be inconvenient for the parties to appear in Minnesota. In sum, none of the factors indicate that Defendant Watts could reasonably anticipate being summoned into court in Minnesota by denying a prisoner appeal in his Washington D.C. office. See McCabe v. Basham, 450 F. Supp. 2d 916, 926 (N.D. Iowa 2006) (holding the supervisory status of senior level federal government officials insufficient to provide personal jurisdiction over the officials in Iowa); see also Hill v. Pugh, 75 Fed. App'x. 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities

within a forum state.").  Therefore, the Court does not have personal jurisdiction over Defendant Watts.

For the foregoing reason, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60]), pertains to Plaintiff's claims against Defendant Watts, the motion be **GRANTED**.

### ii.   Deliberate Indifference <u>Bivens</u> Claims Against Defendant Mock

Plaintiff alleges that, on April 17, 2011, Defendant Mock was deliberately indifferent to his health and safety when she presented him with a document containing the results of a urinalysis that he *suspects* she falsified.  (Am. Compl., [Docket No. 2], ¶ 68) (emphasis added). Plaintiff argues that falsifying the report posed a threat to his life by leaving open the possibility that he was experiencing symptoms from gonorrhea and chlamydia infections he had contracted in 1996 that would remain undiagnosed.

"A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors."  <u>Aldaco v. Holder</u>, No. 10-cv-590 (JRT/LIB), 2011 U.S. Dist. LEXIS 22780, at *7-8 (D. Minn. Jan. 7, 2011) (citing <u>Bivens</u>, 403 U.S. at 395-97).  "A <u>Bivens</u> claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct.  A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law." <u>Id.</u> at *8.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on persons convicted of crimes.  See <u>Rhodes v. Chapman</u>, 425 U.S. 337, 344-46 (1981).  Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, violates the Eighth

Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see also Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs" (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976))).

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). Therefore, whether Plaintiff has stated a claim upon which relief may be granted in the present case depends on whether Plaintiff has alleged facts sufficient to create a "facial[ly] plausib[le]" claim against Defendant Mock for deliberate indifference to a serious medical need. Iqbal, 556 U.S. at 662.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention.  Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir.1995).  "Deliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006).  Accordingly, Plaintiff must plead "more than negligence, more even than gross negligence . . . ." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez v.

Rosemack, No. 09-cv-2121 (RHK/LIB), 2011 U.S. Dist. LEXIS 103513, at *13 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.) (citing Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)).

a. Falsifying medical records

There is a threshold issue whether an allegation of falsifying a medical record, without more, would suffice to allege a claim for deliberate indifference to a severe medical need in violation of the Eighth Amendment. See Vieux v. Fed. Bureau of Prisons, 1:12-CV-00017-MHH, 2014 WL 3733022 (N.D. Ala. July 21, 2014) ("The Court has located no authority that recognizes an independent cause of action under the Constitution or other federal law for the alleged falsification of medical records."); but see Wilkins v. Illinois Dep't of Corr., CIV. 08-CV-732-JPG, 2009 WL 1904414 (S.D. Ill. July 1, 2009), on reconsideration in part, CIV 08-CV-732-JPG, 2009 WL 4894588 (S.D. Ill. Dec. 11, 2009) ("It is at least arguable that falsifying [ a defendant's] medical records implicates his Eighth Amendment rights because the deliberate inaccuracies may prevent him from receiving adequate medical care."). However, even assuming, for the sake of argument, that an allegation of falsifying a medical record would suffice to allege a claim of deliberate indifference, Plaintiff's Amended Complaint fails to do so here.

Plaintiff's sole factual allegation that he had an objectively severe medical need is that he believed that he was experiencing "loss of semen" as a symptom of inadequately treated venereal infections he had contracted fifteen years earlier. Plaintiff reported in his pleadings that he was examined in response to expressing his concerns about his previous venereal infections and that the resulting examination did not reveal a need to test him further for those infections. The Eighth Circuit has long held that a Plaintiff's self-diagnosis does not establish the existence of medical problems when the medical evidence is to the contrary. See, e.g., Hammond v. Delano,

69 F.3d 541 (8th Cir. 1995) (citing <u>Kayser v. Caspari</u>, 16 F.3d 280, 281 (8th Cir.1994); citing also <u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995)).  Because Plaintiff alleges that he merely believed he was experiencing the symptom, Plaintiff's actual allegation is even less persuasive than a self-diagnosis.  Plaintiff's subjective belief is insufficient to establish an objectively serious medical need.  Similarly, while the Court must accept Plaintiff's allegation that he *suspected* the test results offered to him by Defendant Mock were falsified, Plaintiff's allegation about his suspicions is insufficient to allege that Defendant Mock falsified the document or disregarded any of his medical needs.  Therefore, Plaintiff's <u>Bivens</u> claim alleging Defendant Mock falsified a medical record fails to state a claim upon which relief may be granted.

For the foregoing reason, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60], pertains to Plaintiff's claim that Defendant Mock falsified a medical record, the motion be **GRANTED**.

b.  <u>Denying exam</u>

Plaintiff also claimed that, on October 16, 2012, Defendant Mock acted with deliberate indifference by refusing him a stress-echo exam.  The facts alleged in Plaintiff's amended complaint do not contain any specific factual allegation that Defendant Mock denied him any specific medical examination on that date.  However, Plaintiff does allege that he received notice on October 18, 2012, that the URC, of which Defendant Mock was a member, denied him authorization for an event monitor to evaluate his statements about his heart palpitations.  Construing Plaintiff's Amended Complaint under the liberal standard for *pro se* plaintiffs, the Court infers that Plaintiff has alleged that Defendant Mock, alone or with the other members of the URC, denied authorization for Plaintiff to be tested via an event monitor.

Plaintiff's factual allegations indicating that he had an objectively severe medical need to be tested via an event monitor consist of his self-reported heart palpitations, shortness of breath, and feeling faint.  Plaintiff, however, has also alleged that the Acting Medical Director denied authorization for the test because Plaintiff's other medical indications, including the results of an echocardiogram, were normal and did not warrant the test.  Plaintiff has further alleged that Defendant Mock had concluded the reported palpitations, shortness of breath, and feeling faint to be symptoms of a panic disorder rather than a coronary illness. As such, Plaintiff's factual allegations, at most, amount to a disagreement about how his self-reported symptoms should have been treated.

A prisoner cannot maintain a deliberate indifference claim simply because he disagrees with his medical treatment. Jolly, 205 F.3d at 1096.  The Eighth Circuit has explained:

> [N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. See id. at 327–28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir.1989); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).

Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).  As such, Plaintiff's Bivens claim that Defendant Mock denied him authorization to be tested via a specific exam fails to state a claim on which relief can be granted.

Therefore, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60], pertains to Plaintiff's claim that Defendant Mock denied him a medical exam, the motion be **GRANTED**.

In the alternative, the Court concludes that, even if Plaintiff had alleged claims against Defendant Mock upon which relief would be granted, Defendant Mock would be absolutely

immune from suit as a Public Health Service ("PHS") employee.   In <u>Hui v. Castaneda</u>, (2010), the Supreme Court held that PHS employees are immune from <u>Bivens</u> claims arising from the performance of their job-related medical duties.   The Court explained that:

> This case presents the question whether 42 U.S.C. § 233(a) . . . precludes an action under <u>Bivens</u>, . . . against U.S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.' Based on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to <u>Bivens</u> actions for harms arising out of such conduct.

<u>Id.</u> at 1848–49 (emphasis added). <u>See also</u> <u>Bransgaard v. U.S. Bureau of Prisons Health Service Staff</u>, No. 5:11–CT–3122–FL, (E.D.N.C. 2012), 2012 WL 3732822 at *7 (42 U.S.C. § 233(a) "protects commissioned Public Health Service officers and employees from being subject to suit 'for damage for personal injury ... resulting from the performance of medical, surgical, dental, or related functions' ") (quoting <u>Hui</u>, 130 S.Ct. at 1851).   Accordingly, even had Plaintiff stated claims against Defendant Mock upon which relief could be granted, Defendant Mock would be entitled to immunity with respect to those claims.

### ii. Deliberate Indifference <u>Bivens</u> Claim Against Defendant Bennett

Plaintiff's <u>Bivens</u> claim against Defendant Bennett alleging she offered Plaintiff antibiotics and improperly performed a urethral swab also fails to state a claim upon which relief may be granted.   As discussed above, Plaintiff has failed to allege any facts which, accepted as true, would demonstrate that he had any objectively serious need for medical attention with regard to his belief that he had was experiencing symptoms of inadequately treated earlier venereal diseases.   In addition, Plaintiff has alleged that Defendant Bennett in fact offered him

treatment, albeit not the treatment Plaintiff preferred. Plaintiff may not maintain a claim of deliberate indifference merely because he disagrees with the treatment provided.  Long, 86 F.3d at 765.  Therefore, Plaintiff's deliberate indifference claim alleging Defendant Bennett failed to properly treat Plaintiff's alleged venereal diseases fails to state a claim upon which relief could be granted.

In addition, Defendant Bennett is also a PHS employee.  As such, even had Plaintiff's amended complaint stated a claim against Defendant Bennett upon which relief could be granted, Defendant Bennett too would be entitled to immunity as to Defendant's Bivens claims. See Hui, 559 U.S. at 802.

For the foregoing reasons, the Court recommends that, to the extent Federal Defendants' Motion to Dismiss, [Docket No. 60], pertains to Plaintiff's claim against Defendant Bennett, the motion be **GRANTED**.

### iii. Deliberate Indifference Bivens Claim Against Defendant Harvey

Plaintiff's Bivens claim that Defendant Harvey was deliberately indifferent to Plaintiff's medical need by falsifying medical records also fails to state a claim on which relief may be granted.  Plaintiff alleges Defendant Harvey falsified a statement included in the April 18, 2012, administrative note that memorialized his decision to revoke his initial authorization for a stress-echo exam that, in pertinent part, stated Plaintiff's "labs were normal."

Assuming, for the sake of argument, that a claim of falsifying a medical record, without more, could form the basis of a Eighth Amendment deliberate indifference claim, Plaintiff has failed to allege that he had an objectively serious medical need for the stress-echo exam.   "To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson

would recognize the need for a doctor's attention." <u>Aswegan</u>, 49 F.3d at 464; <u>see also</u> <u>Kayser</u>, 16 F.3d at 281 (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate).  The only medical evidence in the pleadings regarding the condition of Plaintiff's heart is a reference to an EKG conducted by Defendants Mayer and Bennett, the results of which were normal.   As such, Plaintiff has not alleged anything other than a naked assertion unsupported by any specific facts that he had an objectively serious medical need for the stress-echo exam. Therefore, Plaintiff has failed to state a deliberate indifference claim against Defendant Harvey upon which relief may be granted.

Assuming Plaintiff had sufficiently alleged his claim, Defendant Harvey is also a PHS employee who is absolutely immune from suit in a <u>Bivens</u> action. <u>See</u> <u>Hui</u>, 559 U.S. at 802. For all of the foregoing reasons, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60]), pertains to Plaintiff's claims against Defendant Harvey, the motion be **GRANTED**.

### iv. Deliberate Indifference and Retaliation <u>Bivens</u> Claims against Defendant Fisher

Plaintiff's allegations against Defendant Fisher fail to state either deliberate indifference or retaliation claims upon which relief may be granted.

a. <u>Deliberate Indifference</u>

Plaintiff alleges that Defendant Fisher failed to provide him with staff capable of providing Plaintiff with adequate medical care.  As discussed in the sections above, Plaintiff has failed to allege facts sufficient to demonstrate that he suffered from an objectively serious medical need.  Nor does Plaintiff offer any factual allegations to support his naked conclusory allegation that the medical staff at FCI Sandstone was inadequate to address his medical needs. In essence, Plaintiff's deliberate indifference claim is that he did not receive the treatment he

thought most appropriate.  However, a prisoner cannot maintain a deliberate indifference claim simply because he disagrees with his medical treatment. Jolly, 205 F.3d at 1096.

   b.  Retaliation

Plaintiff alleges that Defendant Fisher retaliated against Plaintiff by transferring him to FCI Otisville.  To sufficiently allege a claim of retaliation, Plaintiff must assert sufficient factual allegations that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty. Mo., 738 F.3d 907, 911 (8th Cir. 2013) (citations omitted).   Plaintiff has neither alleged nor submitted any facts that the transfer to FCI Otisville was an adverse action.  As such, Plaintiff has failed to allege a claim of retaliation on which relief could be granted.

Even assuming that Plaintiff had alleged claims of retaliation against Defendant Fisher on which relief could be granted, Plaintiff has failed to administratively exhaust his claims against Defendant Fisher.  "The Bureau of Prisons (BOP) has a multi-step process for inmates to use in bringing complaints about any aspect of their confinement: an informal resolution, an administrative remedy (with the warden), an appeal to the BOP's regional director, and finally an appeal to the BOP's central office. There are deadlines for each step." Id. (citing 28 C.F.R. § 542.10 to .18).  There is nothing in the pleadings to indicate that Plaintiff ever availed himself of the BOP system with regard to his claims of inadequate medical staff or retaliation.[4]  Dismissal of unexhausted Bivens claims is mandatory.  Marlin v. Marquez, 218 F. App'x 545, 545 (8th Cir. 2007).

---

[4] There is similarly no indication that Plaintiff ever availed himself with respect to his claims asserting Defendant's Mock and Harvey falsified medical documents.  As such, Plaintiff has also failed to administratively exhaust those claims.

For all of the foregoing reasons, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60]), pertains to Plaintiff's claims against Defendant Fisher, the motion be **GRANTED**.

**vi. State law negligence claims against the United States.**

 As alleged, Plaintiff's state law claims against the United States fail to identify which specific Defendant took the pertinent actions for which Plaintiff alleges that Defendant United States was negligent.   Under the liberal pleading standard for *pro se* plaintiffs, the Court construes Plaintiff's state law negligence claims as alleging the United States was negligent for failing to provide a reasonable course of treatment: 1) when Defendant Mock falsified Plaintiff's urinalysis report; 2) for Plaintiff's venereal infection; 3) when Defendant Harvey falsified the April 18, 2012, administrative note; 4) when Defendant Mock and Defendant Harvey intentionally denied authorization for Plaintiff to receive a stress-echo exam; 5) for Plaintiff's general medical needs; and 6) for Plaintiff's heart condition.

Upon careful review of Plaintiff's pleadings, the Court concludes that none of Plaintiff's state law negligence claims have alleged sufficient facts to state claims upon which relief can be granted.   Assuming that Plaintiff has sufficiently alleged the existence of breaches to the pertinent duties of care, there is quite simply no factual allegation in the pleadings that Plaintiff suffered any injury or harm from the actions that he alleges were negligent.  Therefore, the Court recommends that, to the extent the Federal Defendants' Motion to Dismiss, [Docket No. 60]), pertains to Plaintiff's state law negligence claims against the United States, the motion be **GRANTED**.

Because the Court recommends that all of Plaintiff's claims against the Federal Defendants be dismissed either for lack of personal jurisdiction or for failure to state a claim, the Court does not reach the Federal Defendant's alternative motion for summary judgment.

## IV.   CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

   1.  Plaintiff's Motion to Amend the Amended Complaint, [Docket No. 54], is **DENIED**.

B. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

   1.  The Federal Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, [Docket No. 60], be **GRANTED**; and,

   2.  Defendant Thomas Mayer's Motion for Summary Judgment and/or Statutory Dismissal Pursuant to Minn. Stat. § 145.682, [Docket No. 72] be **GRANTED**.

Dated: January 5, 2015
                                     s/Leo I. Brisbois
                                     The Honorable Leo I. Brisbois
                                     United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 19, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 2, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.